# CASES ARGUED AND DETERMINED

## IN THE

# SUPREME COURT OF MISSISSIPPI

### AT THE

## OCTOBER TERM, 1911.

---

### JOHN EATON v. ROSCOE BROADERICK.

[57 South. 298.]

1. WILLS. *Construction. Rule of descent. Tenants in common. Improvements.*

> Where a testator directed in his will that the cotton on hand be sold as soon as possible and the money turned over to his wife, the proceeds of the cotton were devised to her absolutely.

2. WILLS. *Construction. Rule of descent.*

> Personal property not disposed of by the testator's will passes under the statute of descent and destribution to the widow and testator's children and grandchildren according to that statute.

3. WILLS. *Construction.*

Where by will the testator directed that his land should not be sold until his wife's death, and that then it should be sold, and that notes due him should be collected and the money remain in his wife's hands until her death, such a provision vested a life estate in the widow in the land and in the proceeds of the notes by necessary implication.

4. TENANTS IN COMMON. *Improvements.*

Where a will provided that no child of the testator should interfere with another's improvements upon the testator's land, and that each child owned the improvements which such child had made and that the land should be divided equally among the children after the death of the widow, the children who take as tenants in common, were entitled to the improvements made severally by them without being charged rent thereon, and if possible have allotted to them the land on which such improvements may have been erected.

APPEAL from the chancery court of Tishomingo county. HON. J. Q. ROBBINS, Chancellor.

Suit by Roscoe Broaderick against John Eaton et al. for the construction of the will of J. M. Eaton, deceased. From a decree for complainant, defendants appeal.

On June 6, 1896, J. M. Eaton died, leaving as his heirs at law his widow, Emaline Eaton, and his children, John, Tobe, and Wister Eaton, and another son, Bill Eaton, who afterwards died, leaving a wife and children, and Roscoe Broaderick, a grandson, both of whose parents died before the death of J. M. Eaton. Broaderick, who was complainant in the court below, on becaming of age, filed a bill in chancery on the 20th day of March, 1911, making the other heirs parties defendants, asking a construction of the will of J. M. Eaton. Said will is as follows: "My will is that the land remain unsold until after Ma's death and then to sell the land at public auction and noboddy alloud to bid on the land but the children, and one not to bid against another and not bid over one dollar per acre. The notes to be collected and the money to remain in Ma's hands untill her death, the

boys having the authority to collect them.. One of the boys to be Rosco's and Wister's guardeen and to see that they have a good horse or mule when they become of age. I want all of the notes turned over to the boys, Tobe, John and Bill, and Ma, and not to tell nobody how much the notes is and who they are on. The cotton on hand to be sold as soon as possible and the money turned over to Ma. No child shall interfere with another's improvements, all of the improvements that he has done is his. I don't want any of my old customers bothered but let them pay as much as they can and make new notes until Ma's death and then the matter must be close up and a final settlement be made. The land to be divided by the tax receipt in equal number of acres and Roscoe to share the same as the rest of the children.''

The chancellor gave a written memorandum of his opinion, which is as follows:

''The court is of the opinion, on the hearing of this cause on the petition to construe the will, that some parts of the will are so vague, uncertain, indefinite, and conflicting as to make them void. But there are some provisions that are sufficiently certain and definite, and the will will not therefore be declared as entirely void, but only noneffective as to those provisions that are so unintelligent and inconsistent. The court is of opinion that it is clear that the testator did not desire his land divided until after the death of his widow, whom it is agreed is meant by 'Ma' in the will. It is also clear that he intended the beneficiaries under his will should have the benefit of all improvements such beneficiary or devisee had made or should make on the land occupied by him, and that each devisee should be allotted, as far as practicable in the final division or partition of the land, the land on which he had placed such improvements, and is this could not be done he should be allowed or credited with such improvements. This can be settled in accordance with the desire and will of the

testator in the final settlement of the estate and partition of land, or its proceeds after the death of the widow.

"It is equally clear that the testator did not contemplate a division among the devisees and legatees of the notes due at the time of his death to his estate. He certainly, however, contemplated that the proceeds of such notes should be preserved until after the widow's death and then divided. It is also clear that he contemplated that each one of his children and Roscoe Broaderick, the sole representative heir and distributee of his sole deceased child, should take an equal value of land and in as nearly as practicable of equal acreage, not counting improvements made by any devisee, and that they should likewise take an equal division of said proceeds of said notes. His method of dividing the land is uncertan, indefinite, and inconsistent, and entirely impracticable, and will have to be disregarded, and the provisions directing the manner of such divisions are void.

"I think the terms of the will give the proceeds of the cotton on hand at his death to his widow absolutely. He makes no definite and certain disposition as to any money or other personal property than the said cotton and, notes, and therefore all such money and personal property would pass under the statute of distribution absolutely to his widow, his children, John Eaton, Tobe Eaton, Wister Eaton, and his grandson, Roscoe Broaderick, each one-seventh, and Mrs. Eleanor Eaton, widow of Bill Eaton, and Bolivar Eaton and Lillian Eaton, only children of Bill Eaton, each one-third of one-seventh.

"No executor is named by the testator to carry out the provisions of his will, and it will be necessary to appoint an administrator *cum testamento annexo*. No intelligible disposition is made of the rents and profits of the land during Mrs. Eaton's (Ma's) life, and the land therefore descends to the devisees as tenants in common, and each is entitled to his proper proportion of

such rents and profits from the real estate during the life of his widow. He has, however, provided that the occupants shall have his improvements, and so the tenant in common occupying such should not be charged with rent on his improvements, but should account for reasonable rent of the land, unless all occupy or use practically the same amount. The administrator *cum testamento annexo* will have to collect and apportion the rents. He should also have the custody of the notes due at decedent's death and the proceeds of any that have been collected, and administer under the direction of the court. The proceeds of any money on hand (not loaned out) and the personalty should also be administered by him, and distributed as soon as practicable, as above directed.

"An accounting will be necessary to fix and determine the interest of the parties, and to fix the amounts and disposition made of the personal property, and ascertain the amount of the money and notes, and what of these have been collected, and who is accountable for same; and a master will be appointed to take and state such account. Probably one of the sons may desire to administer. For the present a bond of two thousand dollars is fixed for such administrator. This can be changed on the coming in of the report of the master."

A decree in accordance with this opinion was entered, and a master appointed to take and state an account, and an appeal granted to either party desiring same.

*W. L. Elledge,* for appellant.

The decree of the court is that appellee and apepllants take the land by devise as tenants in common, subject to the delay until Mrs. Emaline Eaton's death, and that they are liable to each other for rents. Our theory is that under this will Mrs. Emaline Eaton, the widow of the devisor, takes a life estate in the land by implication, and that appellee and the remaining appellants take a remainder under the will as tenants in common.

If our contention is correct, then Mrs. Eaton, the life tenant, is entitled to the rents and is charged with the corresponding duties of a life tenant, and such remainderman as might have occupied portions of the land would be liable to her for rent and not to other remaindermen. It will thus be observed that the determination of the first assignment of error determines the three remaining assignments. If the decree is correct on the first assignment of error it is correct on the other three.

What was the intention of the devisor as he lay on his death bed four days before the dissolution and called his family around him and made this will? They knew nothing of legal phraseology, of estates, of tenures, etc.; they were inexperienced in the art of drafting wills and carving estates and creating tenures. The will itself shows that. Crudely drawn, unintelligible in parts, vague and uncertain in others; but taking those parts that are intelligible and what intention—legal intention —appears? We think that the devisor desired that his family should remain as they were at his death; that his estate should remain intact, the land, and the personal property; that all should remain exactly as it was at that time, the time of making the will (a death-bed will), until when? Until his wife, Mrs. Eamilne Eaton, died. The land should be divided, but not while she lived. The minor son should be raised and also the minor grandson, the appellee, then eight years old; and at her death all should be settled, and the land divided, each child having its own improvements protected in the final division. If such was his intention, the question remains, was it his legal intention, that is, was it put into this will; did he put such an intention into his will? We think he did. What better vehicle af the law could have brought into requisition to accomplish such a purpose than an express life estate with these special privileges to the remaindermen as to their individual improvements?

A life estate is not created expressly, but we contend that there is a life estate by implication. We take it as indisputable that this land was devised to the children and grandchildren, but when should they take? At the death of the devisor or at the death of Mrs. Emaline Eaton? Clearly we think at the death of the latter. If such be the case, he has failed to provide who shall take the land until the 'death of Mrs. Eaton. The law does not permit a vacuum in title. If the holder of the legal title does not dispose of it at his death then the law undertakes the task of disposing of it for him, the law of descent. The legal title to this land vested somewhere immediately upon the death of Mrs. J. M. Eaton. Where? Upon the children and grandchildren? No, they are postponed until Mrs. Emaline Eaton's death.

Then upon who does this title fall? Who would be the proper party to maintain ejectment? Our answer is, Mrs. Emaline Eaton (ma). She takes a life estate by implication, subject however to the right of the remaindermen to continue their improvements as mentioned in the will. To this proposition we cite the following authorities, to-wit:

Blackstone in his rules for the construction of wills states the proposition as follows: "By a will also an estate may pass by mere implication, without any express words to direct its course. As, where a man devises land to his heir at law, after the death of his wife; here, though no estate be given to the wife in express terms, yet she shall have an estate for life by implication; for the intent of the testator is clearly to postpone the heir till after her death; and if she does not take it, nobody else can." Chase's Blackstone (3d Ed.), p. 506.

The rule is stated and discussed in Jarmin on Wills (3d Ed.), 435-437; also, 1 Washburn on Real Property (2d Ed.), p. 88, sec. 7; *Langrick* v. *Gospel,* 48 Mich. 185, 12 N. W. 38; *Donohue* v. *McNichol,* 61 Pa. (11 P. S. Smith) 73; 20 Am. Dig., p. 1397, sec. 615, life estates by implication.

We think from the whole will considered together that the land was devised to the children and grandchildren after the death of the wife, althaugh it does not expressly say so, yet that is the meaning as we view it.

*W. C. Sweats,* for appellants.

This may seem absurd, but if the court can learn what the testator intended, that intention must stand. It was clearly the intention of the testator that the land remain unsold until after "Ma's" death, and, as we view it, just as clearly implied that "Ma," the widow, should have a life estate therein. It is also clear that the children and Roscoe should have the land in equal parts, or as nearly so as possible, after "Ma's" death. It is also clear that the widow was to retain all the money to be collected until after her death, and that the boys, Tobe, John, and Bill should collect the outstanding notes, and that this money should be turned over to "Ma."

Now we contend that the widow had a right to use that money, or such part thereof as she might need; otherwise, why did he want her to retain the money? What other reason could have have had for wanting her to have it except to use it as it might be needed? He also provides that his old customers are not to be bothered until after Ma's death, after which the matter should close up. That provision may seem unreasonable, but it is clearly expressed, and we can see no reason for declaring it void.

*W. J. Lamb,* for appellee.

The construction that is attempted to be put on this will by counsel for apellants, that the wife had a life estate in this land, is farfetched and is not borne out by the very instrument on which they are trying to stand; and the conduct of Emaline Eaton since the death of J. M. Eaton shows that she did not so interpret the will, nor did she believe that the intention of the de-

ceased was that she should have a life estate, for, as is shown by apellee's bill, and is not disputed or denied, the widow is living on this land and John, Tobe and Wister Eaton are living on this land without any part of it being set apart to them, using it free of charge and rendering no accounting to any one for the use and occupation of the same, and have continued to do so from the time of the death of their father up until the present time. These same parties were in possession of this land at the very time of the making of the will by the deceased and have continued so.

"As the testator has not, by plain words, expressed such intention, we cannot, by construction, import into his will such words as would clearly indicate such intent, for this would be to make a will for him, and not to construe one made by him. The intention of the testator is the polar star for inquiry in the interpretation of his will, but such intention must be collected from the words which he has employed; the question is not what he wished, but what he has said. Broom's Leg. Max. 555." *Johnson* v. *Delome, etc., Co.,* 77 Miss. 27.

When it comes to disposing of the personal property the will presents greater difficulties, if possible, than it does when disposing of the real estate, and we think that the chancellor gave the appellants everything they were entitled to under this instrument of writing. We do not feel like wearying the court in presenting a matter *ipsa res loquitur.* By merely referring to this instrument of writing and reading it, the court can see as plainly that the opinion of the chancellor is as near correct in this case as anything that can be said if we were to write any number of pages on this matter, so we respectfully refer the court to the chancellor's opinion in this case and the instrument of writing purporting to be the will, and let the court ascertain whether the chancellor was right or wrong in his opinion.

WHITFIELD, C.

This case presents for construction the will of J. M. Eaton. The reporter will set out this will in full.

We concur with the chancellor in so far as he held that the proceeds of the cotton on hand at the death of the testator were bequeathed to the widow absolutely, and also in so far as he held that any money or other personal property than the cotton and the notes passed under the statute of descents and distribution to the widow and his children and grandchildren according to that statute.

We do not concur in his construction as to the title to the land or the proceeds of the notes. We are clearly of the opinion that the will vested a life estate in the widow in the land, and in the proceeds of the notes by necessary implication.

We also concur in the chancellor's holding that the tenants in common who made improvements should keep those improvements, and, if possible, have allotted to them the land on which such improvements may have been erected, without being charged with rent on his improvements. The land will be divided at the death of the mother, the widow, as directed in the will.

*Reversed and remanded.*

PER CURIAM. The above opinion is adopted as the opinion of the court, and for the reasons therein indicated the decree is reversed, and the cause remanded, to be proceeded with in accordance with the foregoing opinion.